UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 12-cv-5598 |
| | ) | |
| v. | ) | Hon. Milton I. Shadur |
| | ) | |
| CAPITAL REALTY & DEVELOPMENT LLC and RICHARD P. TURASKY, JR., | ) | Hon. Jeffery Cole |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF MOTION FOR RULE TO SHOW CAUSE AGAINST
PHILIP J. NATHANSON, MICHAEL KANG AND DAVID M. TRANDEL**

Movants Capital Realty & Development LLC and Richard P. Turasky, Jr., by their undersigned attorneys, submit this reply in support of their motion for a rule to show cause against Philip J. Nathanson, Young Ho Michael Kang and David M. Trandel, along with the declarations of Michael Johnson and the second declaration of Richard P. Turasky, and request that this Court grant Movants an evidentiary hearing, much like a garden-variety citation proceeding, to determine what of Movants' assets Alleged Contemnors hold that should be used to satisfy the underlying judgment.

**I.  THE ONLY "FRAUDSTERS"
ARE THE ALLEGED CONTEMNORS**

The response brief and the affidavits filed by the Michael Kang, Philip Nathanson, Jeffrey Krol and German Osio only established what Movants already knew: the Alleged Contemnors are fraudsters. That label has been unfairly placed on Movants, largely due to unprofessional vitriol of one of plaintiff's attorneys. We remind the Court that plaintiff may be a judgment creditor, but plaintiff has never taken a single deposition in this matter, pre- or post-judgment, so counsel's "shell-game" and like disparagements is mere argument. In

contrast, Movants here present evidence that the Alleged Contemnors have committed a fraud on this Court. While the facts that are presented herein for context are appalling, the evidentiary hearing Movants request to show what of their assets are in the hands of third-parties is not, and Movants incorporate their argument about the simplicity of the proposed evidentiary hearing which is set forth in their response to Alleged Contemnors' motion to dismiss for lack of subject-matter jurisdiction (Doc. No. 182).

    A. **The Arizona Lawsuit Is Fraudulent**

The Alleged Contemnors seem to take the position that because they were the "first to file" a lawsuit against Richard Turasky which puts "in issue . . . the ownership issues as to Whisper Capital and its assets," they cannot be held in contempt for violating this Court's charging order. However, such an argument is fundamentally flawed because *there is no issue* as to the ownership of Whisper Capital!

The Alleged Contemnors have not filed a single document disputing the fact that MDT Consulting, LLC is, and always has been, the sole member of Whisper Capital. They even admit as much in their motion to dismiss (and in several other documents filed with this Court) by describing MDT Consulting, LLC as "the sole designated member of Whisper Capital Group, LLC." (Doc. No. 179, ¶ 4.)

The Alleged Contemnors seem to take the position that because Kang "funded" Whisper Capital, he is its owner. (Please leave aside for the moment that this claim is an abject falsehood.) However, the voluminous record filed by the Alleged Contemnors contain no documents reflecting that Kang invested any money in Whisper Capital. The Arizona "ownership" complaint filed by Mr. Nathanson even reflects that Kang did not fund Whisper Capital. Instead, it hedges around Kang's role in Whisper Capital by alleging that he "furnished

or caused to be furnished capital for Whisper Capital to operate." Yet, there are no documents attached to the complaint reflecting Kang's "furnishing" of capital to Whisper Capital.

At one point, Kang had misled Richard Turasky into believing that some of the money funding Whisper Capital was his, and that caused Richard Turasky to write e-mails or authorize litigation which he now has to explain, most probably in some other forum.

Kang is not the only plaintiff in the recent Arizona complaint. It is also supposedly brought by four individuals named Chan Lit Sang, Wong Ching Man Vienna, Ng Hei and Chan Lit Chow (the "Note Holders"). (Doc. No. 156, Ex. 1.) The complaint attaches Note Purchase Agreements executed by Richard Turasky and these Note Holders, reflecting that they furnished an unspecified amount of capital to Whisper Capital. (Doc. No. 156, Ex. 1, Grp. Ex. 2.)

Importantly, in a move that now proves reflective of Mr. Nathanson's *modus operandi*, Mr. Nathanson never had any authority to file the Arizona Lawsuit on behalf of the Note Holders. The reason the four individuals could not have authorized Mr. Nathanson to file the lawsuit is clear: on September 14, 2013, these Note Holders sold their investments in Whisper Capital to 1141566 Ontario Inc. ("Ontario"), as proven in the declaration of Michael Johnson, Ontario's president, and the transfer agreement executed by the four individuals.

As the Arizona lawsuit is both factually and legally deficient, the Alleged Contemnors cannot rely on its filing as an attempt to divert this Court's attention from their contemptuous behavior relating to U.S. Bank's judgment *in quo*.

### B. Michael Kang Has No Interest in Whisper Capital

The Alleged Contemnors start out their response to the rule to show cause motion by taking one statement from Richard Turasky's declaration out of context (his statement that

"Michael Kang is a complete stranger to Whisper Capital") in an effort to portray Richard Turasky as a liar. However, a quick glance at the declaration reveals that Richard Turasky made the statement in reference to the fact that Kang is not and never has been a member or manager of Whisper Capital, an important fact that the Alleged Contemnors never dispute:

> 4. Young Ho "Michael" Kang is not currently and never has been a member or manager of Whisper Capital. Michael Kang is not currently and never has been a limited partner of RT Ventures, LP. Michael Kang is not associated with Whisper Capital's manager, Canal Investment. Michael Kang is a complete stranger to Whisper Capital.

(Turasky Dec., ¶ 4.)

Even more suspicious is the fact that Michael Kang only supports his assertion that he "funded" Whisper Capital with self-serving statements he made in e-mails to Richard Turasky and a purported loan document reflecting that *he owes* Whisper Capital $1,630,000.00. Kang has proffered no documents indicating that he invested and/or loaned any funds to Whisper Capital.

At Whisper Capital's inception, Richard Turasky believed that Kang facilitated the Note Holders' funding of Whisper Capital, and that is why Richard Turasky took direction from Kang and allowed Kang to have significant involvement in the business dealings of Whisper Capital, including the Prado home. (Turasky 2nd Dec., ¶ 2.) This is also why Richard Turasky caused Whisper Capital to pay Kang $1,630,000 in 2011 and Richard Turasky suggested to Whisper Capital's counsel at the time that Kang act as Whisper Capital's representative deponent. (Turasky 2nd Dec., ¶ 2.) However, as proven by Michael Johnson's declaration, Kang never had any tie to the funds invested by the Note Holders, and certainly has no tie to them now since they were sold to 1141566 Ontario Inc. Put simply, Richard Turasky was duped by Kang into thinking that Kang did fund Whisper Capital.

4

Additionally, Kang's statement that "Turasky refused to account to [him] for more than $5 million dollars that was missing from the company, which was when we had a falling out" is a blatant lie, which is buttressed by the fact that Kang has submitted no documents to support such a statement. (Turasky 2nd Dec., ¶ 3.) Richard Turasky in fact had a falling out with Kang because, after he received notification from Michael Johnson that Michael Johnson's company had purchased the notes from the Note Holders, Richard Turasky discovered Kang had bamboozled him. (Turasky 2nd Dec., ¶ 3.)

**C.     The Interpleader Filed by Nathanson on Behalf of Kang Is Fraudulent**

In the motion for rule to show cause, Movants explained to the Court the facts regarding the promissory note held by Arlington Capital, LLC ("Arlington Capital") made by Trandel and his company, Arlington Devco, LLC ("Arlington Devco"), for the principal amount of $1,065,000 plus default interest (the "Note"), and attached the Note as Exhibit H to Richard Turasky's Declaration. (Doc. No. 147 at 3.) The first paragraph of the Note clearly and unequivocally states:

> 1.     **AGREEMENT TO PAY.**  For value received, **ARLINGTON DEVCO LLC**, an Illinois limited liability company (the "**Borrower**"), hereby promises to pay to the order of Arlington Capital LLC, a Delaware limited liability company, its successors and assigns (the "**Lender**"), the principal sum of **ONE MILLION SIXTY FIVE THOUSAND AND 00/100 DOLLARS** ($1,065,000.00) (the "**Loan**"), on or before December 31, 2014 ("**Maturity Date**") . . .

(Doc. No. 147, Turasky Dec., Ex. H.) Turasky is the sole member of Arlington Capital. (Doc. No. 147, Turasky Dec., ¶ 13.) None of the Alleged Contemnors refuted this. Nor could they. Yet, they continue to prevent Arlington Capital's, and thus Richard Turasky's, access to $1,065,000 through the fraudulent interpleader action filed by Nathanson on behalf of Trandel

5

and his company in the Circuit Court of Cook County, Illinois, *Arlington Devco LLC et al. v. Arlington Capital LLC et al.*, Case No. 14-Ch-11072 (the "Fraudulent Illinois Interpleader").

There could not be a clearer act of fraud. <u>First</u>, both the initial and amended complaint were filed improperly because no adverse party to the $1,065,000 was named as a party. (Doc. No. 147, Turasky Dec., Ex. K); 735 ILCS 5/2-409 (persons allegedly having claims to what the plaintiff holds must be "joined as defendants"). By Trandel and Arlington Devco's own filings, there is no adverse party to the $1,065,000. What seems more evident is that Trandel and Arlington Devco are the only "adverse parties" because they do not want to pay.

<u>Second</u>, the Fraudulent Illinois Interpleader amended complaint alleges that the adverse claims to the $1,065,000 were presented to the plaintiffs "[p]rior to June 15, 2014 . . . by a representative of the note holders/investors in Whisper Capital Group, LLC, that those note holders/investors had furnished investment capital to Whisper Capital Group, LLC, and that the managing member of Whisper Capital Group, LLC, Defendant Turasky[1], had used those Whisper Capital Group funds to fund his own company for his own benefit, Defendant Arlington Capital LLC." (Turasky Dec., ¶ 7.) But who are these mystery note holders/investors? Because there is, and has been since September 2013 (the Fraudulent Illinois Interpleader initially was filed July 3, 2014), only one note holder or investor in Whisper Capital: 1141566 Ontario Inc. (Johnson Dec., ¶¶ 3-4.) Michael Johnson presented no adverse claim to Trandel or Arlington Devco regarding the Note.

<u>Third</u>, while the doctrine of interpleader protects the stakeholder even when a baseless adverse claim is asserted, there must still be "in fact a claim . . . [T]he stakeholder must

---

[1] Trandel, one of the Alleged Contemnors, in a pleading filed by Nathanson, another Alleged Contemnor, asserted that Turasky is "the managing member of Whisper Capital Group, LLC."

be in good faith when asserting that adverse claims have been presented to him." *Aetna Life Ins. Co., Inc. v. Strickland*, 33 Ill. App. 3d 52, 55 (1st Dist. 1975). But, as established above, no note holder or investor in Whisper Claim made an adverse claim to Trandel or Arlington Devco. The adverse claim is a fraud.[2] As it is clear who the "fraudsters" are in this proceeding, Movants respectfully request that this Court grant the relief sought in the motion for rule to show cause.

**D.     The Affidavit of Jeffrey W. Krol is Fraught with Self-serving Misrepresentations**

The affidavit of Richard Turasky's former fiduciary and accountant, Jeffrey W. Krol, also contains blatant falsities. It must be noted from the outset that Krol's affidavit indicates that he is a member of Arlington Devco (one of the makers of the promissory note discussed in Section C, *supra*), so it is within his best interest to delay payment on note. Therefore, any statements in his affidavit regarding Richard Turasky's role in the Arlington Downs project and the payments due and owing under the note are self-serving.

Krol states in his affidavit that Richard Turasky disclosed to him that Kang arranged to transfer in excess of $17,000,000 to Whisper Capital, LLC between 2011 and 2012. (Krol Aff., ¶ 3.) However, Krol was always well aware that the funds had been invested into Whisper Capital by the four individual Note Holders, not Kang (as Richard Turasky once may have believed). Since as early as the summer of 2011, Krol knew about the four promissory notes. (Turasky 2nd Dec., ¶ 5.) The absence of any discussion of these promissory notes in Krol's affidavit is striking.

In addition, Richard Turasky terminated Krol and his accounting firm because he was dissatisfied with Krol's lackluster, untimely and unprofessional work. (Turasky 2nd Dec., ¶

---

[2]     Is it just ironic that two of the three Alleged Contemnors and two other individuals filed affidavits in response to the motion to show cause, but Trandel, clearly the one person, along with Turasky, who would know the most about the Note and the Fraudulent Illinois Interpleader, said nothing on the matter?

4.) A copy of the termination e-mail *from* Richard Turasky to Krol is attached to Richard Turasky's declaration as Exhibit 1. Any assertion by Krol that it was he who terminated Richard Turasky because of his proposed deductions in violation of the Internal Revenue Code is blatantly false. (Turasky 2nd Dec., ¶ 4.)

Krol's assertions regarding Richard Turasky's failure to raise $3,500,000 for the Arlington Downs project are both inaccurate and irrelevant to these rule to show cause proceedings. First, Capital Realty & Development, LLC did enter into a term sheet with Arlington Devco on or about October 15, 2012 regarding the raising of capital for the Arlington Downs project. (Turasky 2nd Dec., ¶ 6.) However, Arlington Devco failed to perform virtually any items on this term sheet, thereby voiding Capital's obligation to raise any funds for the project. (Turasky 2nd Dec., ¶ 6.)

Finally, as Richard Turasky asserted in his original declaration, the funds Arlington Capital invested in the Arlington Downs project have no association with Whisper Capital or its various investments. (Turasky Dec., ¶ 18.) Richard Turasky provided wire transfer documentation to Trandel, the individual that executed the promissory note on behalf of Arlington Devco, LLC, showing that all Arlington Capital funds invested in the Arlington Downs project were unassociated with Whisper Capital. (Turasky Dec., ¶ 19.) The lack of an affidavit from Trandel disputing this point is telling.

**E. German Osio Has No Interest in Prado Management, LLC**

There is a glaring admission in German Osio's affidavit: he admits that *he* used the Prado Home as collateral to secure a loan from Metro Phoenix Bank to fund an entity formed by he and Michael Kang, MexKor Restaurant Group, LLC. (Osio Aff., ¶ 4.) Osio even admits that he signed the Metro Phoenix Bank loan as the manager of Prado Management, LLC. (Osio

8

Aff., ¶ 4.) However, his affidavit does not refute the fact that Whisper Capital *never* appointed Osio as a manager of Prado Management, LLC or the fact that Whisper Capital never gave him the authority to take out this loan. Osio's affidavit essentially admits that he and Kang encumbered a Whisper Capital asset (the Prado Home) to invest in a non-Whisper Capital investment (MexKor Restaurant Group, LLC). All of this was done *in violation of* the issuance of the Charging Orders in this action, which govern Whisper Capital, and appear to constitute bank fraud.

## II. THIS COURT HAS PERSONAL JURISDICTION OVER THE ALLEGED COMTEMNORS

This Court clearly has personal jurisdiction over each of the Alleged Contemnors. Attorney Nathanson has filed an appearance on behalf of himself and his two alleged co-contemnors. (Doc. No. 157.)

While this Court expressed concern regarding personal jurisdiction at the April 20, 2015 hearing (April 20, 2015 Transcript at 5, 15-17), each of the Alleged Contemnors were personally served with the Court's Order to Show Cause and the respective subpoena (Doc. Nos. 153-155), each filed an appearance in this Court (Doc. No. 157), and each contested motions by filing two response briefs (Doc. Nos. 156, 164) before personally attending the April 20, 2015 hearing before the Court. The Alleged Contemnors now have filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (Doc. No. 179) without raising the defense of personal jurisdiction.

At no point has any of the Alleged Contemnors argued that the Order to Show Cause should be quashed for lack of personal jurisdiction. The closest that any of the Alleged Contemnors came to addressing personal jurisdiction was in the response brief to the motion for

9

rule to show cause in connection with Kang (Nathanson, an Illinois attorney, and Trandel, an Illinois resident, cannot in good faith dispute personal jurisdiction over them):

> [A]ll three Respondents will personally appear on Monday before this Court, including Michael Kang, who is not subject to the subpoena power of this Court because he is a Canadian citizen who winters in Scottsdale, Arizona. Nevertheless, the [Rule to Show Cause Order] will lead to Mr. Kang's Personal appearance before this Court on Monday, April 20, 2015.

(Doc. No. 156 at 2.) Kang clearly has recognized the Court's personal jurisdiction over him resulting from the Order to Show Cause. Notwithstanding, any personal jurisdiction argument Kang (or Nathanson and Trandel) may have had clearly has been waived.

"Challenges to personal jurisdiction may be waived by either express or implied consent." *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1290 (7th Cir. 1989) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)). A party waives the defense of personal jurisdiction by "failing to either make it by motion under this rule; or include it in a responsive pleading or in an amendment." Fed. R. Civ. P. 12(h)(1)(B); *Trustees of Cent. Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 (7th Cir. 1991).

The Alleged Contemnors have waived their right to raise the defense of personal jurisdiction in several ways. First, they filed a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure (Doc. No. 179) without raising the defense of personal jurisdiction. That alone waives the defense. Fed. R. Civ. P. 12(h)(1); *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 40-41 (1st Cir. 2001).

But Kang already waived any defense of personal jurisdiction even before filing the motion to dismiss. In *Hecht v. Don Mowry Flexo Parts, Inc.*, a rule to show cause was issued to the defendant requiring him to appear and explain why he should not be held in both criminal and civil contempt for failing to abide by a subpoena. 111 F.R.D. 6, 8 (N.D. Ill. 1989) (Hart,

10

D.J.). The court found that the subpoena was invalid due to its method of service and thus, that any finding of criminal contempt for the defendant's failure to abide by it failed as well. *Id.* at 11-13. However, as to civil contempt, the court held that "this otherwise valid defense [of insufficiency of service] ha[d] been waived." *Id.* at 13. It reasoned that the defendant did not challenge the sufficiency of process as a defense in his first response before the court—the response to the motion for sanctions/rule to show cause—and that this constituted waiver of the defense under Rule 12 of the Federal Rules of Civil Procedure. *Id.* at 14; *contra Mallard v. Mallard*, No. 90 C 3335, 1992 WL 47998, at * (N.D. Ill. Mar. 4, 1992) (Zagel, D.J.) (holding that the defendants did not waive their defense of lack of personal jurisdiction where they filed a "special appearance with the Court, expressly reserving the right to contest personal jurisdiction" and "never asked this Court for any relief against the plaintiffs").

Here, Kang filed a general appearance in this Court, did not expressly reserve any right to contest personal jurisdiction, filed two response briefs requesting relief without raising the defense (and in fact, stating that he "will personally appear" (Doc. No. 156 at 2)), and personally appeared before the Court on April 20, 2015, where no such defense was raised orally. All of these actions indicate both an express and/or implied consent to submit to this Court's personal jurisdiction. The requesting of relief especially is "critical" because by asking for relief, Kang (and Nathanson and Trandel) "consented to jurisdiction in the same way a plaintiff consents to jurisdiction by filing an action with a court." *Mallard*, 1992 WL 47998, at *5. All of this not to mention that personal jurisdiction was waived by the motion to dismiss. Accordingly, the Court clearly has personal jurisdiction over the Alleged Contemnors.

11

**Conclusion**

The Court's frustration with Movants is understandable, a court is entitled to have its orders and judgments respected, protected and satisfied. That frustration has been exacerbated by unprofessional vitriol, unprofessional because it is mean-spirited, not supported by any testimony and unnecessarily abusive of Richard Turasky's character. (That the Court has iterated some of these argumentative remarks is unfortunate.) But the Court's frustration, ultimately, is pointed in the wrong direction here. Of course the Court should not be pleased when a judgment debtor dodges satisfaction of a judgment or violates an order. But Movants have done neither here, assets which could pay the judgment are primarily in real estate and illiquid. But this is beside the point because there is an expeditious avenue for satisfaction of the judgment, payment of the promissory note or sale of the Prado home which is frustrated by the Alleged Contemnors. Movants hope that the Alleged Contemnors' filings with this Court, an obvious attempt at distraction, do not drown out the purpose of the motion for rule to show cause—getting U.S. Bank paid.

    Respectfully submitted,

    CAPITAL REALTY & DEVELOPMENT LLC &
    RICHARD P. TURASKY JR.

    By:    /s/ Paul. J. Kozacky
         One of their attorneys

Paul J. Kozacky
Jessica Fricke Garro
Brian P. O'Connor
Kozacky Weitzel McGrath P.C.
55 West Monroe Street, 24th Floor
Chicago, Illinois 60603
(312) 696-0900

**CERTIFICATE OF SERVICE**

       I, Paul J. Kozacky, an attorney, certify that I caused the following persons to be served with this Reply in Support of Motion for Rule to Show Cause against Philip J. Nathanson, Michael Kang And David M. Trandel via ECF on May 1, 2015:

Vincent Thomas Borst
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle Street
Suite 3300
Chicago, IL 60601
vborst@rsplaw.com

Lawrence W. Byrne
Pedersen & Houpt
161 N. Clark St.
Suite 3100
Chicago, IL 60606
lbyrne@pedersenhoupt.com

Catherine A. Cooke
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle Street
Suite 3300
Chicago, IL 60601
ccooke@rsplaw.com

Trent P. Cornell
Pedersen & Houpt
161 North Clark Street
Suite 3100
Chicago, IL 60601
tcornell@stahlcowen.com

Craig Edward Donnelly
Roberts McGivney Zagotta LLC
55 West Monroe
Suite 1700
Chicago, IL 60603
cdonnelly@rmczlaw.com

Kimberly Ann Doucas
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle Street
Suite 3300
Chicago, IL 60601
kdoucas@rsplaw.com

Patrick J. Keating
Roberts McGivney Zagotta LLC
55 W. Monroe Street
Suite 1700
Chicago, IL 60603
pkeating@rmczlaw.com

Philip J. Nathanson
The Nathanson Law Firm
120 North LaSalle Street
Suite 1040
Chicago, IL 60602
philipj@nathansonlawfirm.com

Jerome R. Weitzel
Kozacky Weitzel McGrath P.C.
55 W. Monroe Street
Suite 2400
Chicago, IL 60603
jweitzel@kwmlawyers.com

John N. Rapp
Kozacky Weitzel McGrath P.C.
55 W. Monroe Street
Suite 2400
Chicago, IL 60603
jrapp@kwmlawyers.com

            /s/ Paul J. Kozacky