UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAPITAL REALTY & DEVELOPMENT ) <br> LLC and RICHARD P. TURASKY, JR., ) <br> ) <br> Defendants. ) | Case No. 12-cv-5598 <br><br> Hon. Milton I. Shadur <br><br> Hon. Jeffery Cole |

### SECOND DECLARATION OF RICHARD P. TURASKY, JR.

Richard P. Turasky, Jr., declares under penalty of perjury under the laws of the United States of America that the following facts are based on his personal knowledge and review of records kept in the ordinary course of business and are true and correct, except as to matters stated on information which he verily believes are true, as he competently would testify if called as a witness at trial:

1. I submit this declaration in support of defendants' reply in support of motion for rule to show cause against Philip J. Nathanson, Michael Kang and David M. Trandel.

### Michael Kang & Whisper Capital

2. At its inception, Whisper Capital Group, LLC was funded with several million dollars by four individuals, Chan Lit Sang, Wong Ching Man Vienna, Ng Hei and Chan Lit Chow (the "Note Holders"). True and correct copies of the four Note Purchase Agreements executed by Whisper Capital are attached to Michael Johnson's declaration as Exhibit 1. In 2011 and 2012, I believed that Michael Kang facilitated the Note Holder's funding of Whisper Capital because Kang told me that he did. This is why I took direction from Kang and allowed Kang to

have significant involvement in the business dealings of Whisper Capital, including the Prado home. This is also why I allowed Whisper Capital to pay Kang $1,630,000 in 2011. This is also why I suggested to Robert H. Lang of Thompson Coburn, Whisper Capital's attorney at the time in litigation pending in Maricopa County, Arizona, that Kang act as Whisper Capital's representative at a deposition in that litigation.

3. Kang's statement that I "refused to account to [him] for more than $5 million dollars that was missing from the company, which was when we had a falling out" is a blatant lie. In September of 2013, I received a letter from Michael Johnson notifying me that his company, 1141566 Ontario, Inc., had purchased the four Whisper Capital promissory notes from the Note Holders. A true and correct copy of the letter I received from Johnson is attached to Johnson's declaration as Exhibit 4. After receiving such notification from Johnson, I became suspicious of Kang and his representation to me that he actually facilitated the Note Holders' investments. This was one of many reasons I wanted to remove myself from Kang and his business dealings.

### Jeffrey W. Krol

4. Krol's CPA firm, Jeffrey W. Krol & Associates ("K&A"), performed services for me and my companies over a period of approximately 10 years. However, I fired K&A from such representation because I was dissatisfied with Krol's inaccurate, untimely and unprofessional work. I never proposed that K&A make deductions in violation of the Internal Revenue Code. In fact, I was the one who terminated K&A's services, not the other way around as Krol seems to imply in his affidavit. On February 25, 2014, I sent an e-mail to one of Krol's associates notifying him that we were terminating K&A and requesting that he facilitate the transitioning of his files to his new accountant. Krol responded to that e-mail stating "all good

company, 1141566 Ontario, Inc., had purchased the four Whisper Capital promissory notes from the Note Holders. A true and correct copy of the letter I received from Johnson is attached to Johnson's declaration as Exhibit 4. After receiving such notification from Johnson, I became suspicious of Kang and his representation to me that he actually facilitated the Note Holders' investments. This was one of many reasons I wanted to remove myself from Kang and his business dealings.

### Jeffrey W. Krol

4. Krol's CPA firm, Jeffrey W. Krol & Associates ("K&A"), performed services for me and my companies over a period of approximately 10 years. However, I fired K&A from such representation because I was dissatisfied with Krol's inaccurate, untimely and unprofessional work. I never proposed that K&A make deductions in violation of the Internal Revenue Code. In fact, I was the one who terminated K&A's services, not the other way around as Krol seems to imply in his affidavit. On February 25, 2014, I sent an e-mail to one of Krol's associates notifying him that we were terminating K&A and requesting that he facilitate the transitioning of his files to his new accountant. Krol responded to that e-mail stating "all good things must come to an end. We wish you the best with your new CPA." A true and correct copy of that e-mail chain is attached hereto as Exhibit 1. As a result of the termination, K&A never filed Whisper Capital's 2012 tax returns.

5. Since as early as the summer of 2011, Krol knew about the four promissory notes held by Chan Lit Sang, Wong Ching Man Vienna, Ng Hei and Chan Lit Chow. I told Krol that the funds invested in Whisper Capital by these Note Holders were facilitated by Kang because that is what Kang had told me and I had never spoken to the four Note Holders. I now know, from speaking at length with Johnson, that Kang has never had any interest in these four promissory notes.

6. Krol's assertions in his affidavit that I failed to live up to my obligation to raise $3,500,000 for the Arlington Downs project is inaccurate. On or about October 15, 2012, Capital Realty & Development, LLC entered into a term sheet with Arlington Devco, LLC regarding the raising of capital for the Arlington Downs project. A true and correct copy of this term sheet is attached hereto as Exhibit 2. However, Arlington Devco and its partner, David Trandel, failed to perform virtually any items on this term sheet, thereby voiding Capital's obligation to raise any funds for the Arlington Downs project.

FURTHER AFFIANT SAYETH NAUGHT.
Dated: May 1, 2015

_____
Richard P. Turasky

**From:** "Jeffrey W. Krol" <JKrol@jwkrol.com>
**Date:** February 25, 2014 at 3:02:40 PM CST
**To:** Turasky Rich <rturasky@capitalcompaniesllc.com>
**Cc:** Stephen Lisowski <SLisowski@jwkrol.com>
**Subject: Fwd: FW:**

Rich, as they say, all good things must come to an end. We wish you the best with your new CPA. We will do our best to transition the file to him. We will also be available for any questions or history he may need. We went through our files today and do not possess any of your original records. We only have our work product. We know how important it is to finalize your 2012 tax returns. We hope you can conclude the final audit with Kang and his accountant so you can move forward. As to the conclusion of our business, there is a receivable of $40,000. We have $3,000 of work in progress on current services. Thus, the total due our firm is $43,000. Please let us know when payment will be forthcoming. We will then be happy to transition the relationship. Let us know anything else we can do to assist you and good luck in your future endeavors. Jeff

Begin forwarded message:

**From:** Stephen Lisowski <SLisowski@jwkrol.com>
**Date:** February 25, 2014 at 12:36:18 PM CST
**To:** "Jeffrey W. Krol" <JKrol@jwkrol.com>
**Subject: FW:**

**From:** Rich Turasky [mailto:rturasky@capitalcompaniesllc.com]
**Sent:** Tuesday, February 25, 2014 11:14 AM
**To:** Stephen Lisowski
**Cc:** timothy.king@tkocpa.com
**Subject:**

Steve, We have made the decision to consolidate all of our accounting under one roof with someone in our back yard. Please forward to Tim all of the original documents used for the last couple years in preparing all the tax returns..

Thank you for all the help over the years and please send me any bill that remains outstanding and we will make timely payment of it.





Real Estate
Investment, Finance, Development, Management

October 15, 2012

David Trandel
Partner
Arlington Devco, LLC
3400 W. Euclid Ave.
Arlington Heights, IL 60005

RE: Equity Investment in the Arlington Devco, LLC ("Project Owner") pertaining to the redevelopment project at 3400 W. Euclid Ave., Arlington Heights, IL ("Arlington Downs").

David:

Pursuant to our discussions we are enclosing this letter outlining the structure under which Capital Realty and Development ("Project Partner") will agree to provide an equity investment in the above referenced project. The terms and conditions herein are preliminary and not legally binding on either party until a mutually agreeable contract is fully executed.

1. Project Owner and Project Partner will execute an operating agreement whereby David Trandel and Rich Turasky or their nominee will co-manage the Arlington Downs development project. The following terms shall be incorporated into the agreement:
    a. All investors will become members in a new LLC with Project Owner and Project Partner receiving an 8% preferred return to be accrued and a 50% share in the project above the 8% with a 50% promote share split equally.
    b. An asset management fee in the amount of $20,000 per month shall be paid by the LLC to the co-managers (or designated entity) of the project to be allocated to entities and/or consultants performing work on the project.
    c. Project Partner shall have an office on site to perform project oversight and will be responsible for reporting on a weekly basis to the co-managers. Capital Realty and Development shall have a first right to self perform any development support services, including but not limited to accounting, reporting, construction management, marketing, financing, investor relations and brokerage services, to the project as may be deemed necessary by the managers. Those services shall be paid by the LLC on per occurrence basis.

385 Airport Road, Suite 100, Elgin, IL 60123 • Phone: 847-841-7696 • Fax: 847-841-3



# CAPITAL

Real Estate
Investment, Finance, Development, Management

2. The Project Partner agrees to contribute the sum of $3,000,000 as follows:
   a. $1.5 Million upon a fully executed operating agreement.
   b. Execute a letter agreement to commit to invest an additional $1.5 Million, subject to the Apartment, Hotel and Waterpark developments agreed to and binding and final approval of final sources and uses budget.

3. Under the operating agreement the Project Partner shall have the right to sole management or super majority right under the LLC agreement should the project be unable to meet its development obligations and the investors equity becomes at risk.
4. Project Tax work shall be contracted to Jeffrey W. Krol and Associates, CPA at customary rates.

David, should the terms and conditions outlined above meet with your approval please notify us so that we can commence work on the new operating agreement.

Respectfully,

Timothy Donohue
Capital Realty and Development

*Let's get to work!*